```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

OCI CHEMICAL CORPORATION,        )
                                 )
            Plaintiff,            )
                                 )
      v.                          )     No.  4:05CV1506 FRB
                                 )
AMERICAN RAILCAR INDUSTRIES, INC.,)
                                 )
            Defendant.            )

**MEMORANDUM AND ORDER**

Presently pending before the Court is defendant American Railcar Industries, Inc.'s Motion to Exclude Testimony of Plaintiff's Expert Kenneth Giambagno (filed January 30, 2009/Doc. #78).  All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  Trial is presently set in this cause for April 20, 2009.

Plaintiff OCI Chemical Corporation (OCI) brings this product liability action pursuant to this Court's diversity jurisdiction alleging that defendant American Railcar Industries, Inc. (ARI), designed, manufactured, assembled, and distributed to plaintiff twenty-five new railcars for the purpose of transporting sodium percarbonate; and, further, agreed to design a pressure relief system for railcars carrying sodium percarbonate. Plaintiff alleges that upon its receipt of the railcars, it proceeded to transport sodium percarbonate therein and that two of said railcars exploded due to increased pressure within the railcars, and that

other railcars experienced increased interior pressure. Plaintiff asserts that the railcars were in defective condition in that they were designed, manufactured, assembled, produced, and distributed with defective and insufficient pressure relief systems. In addition to its claims sounding in product liability, plaintiff also brings contract claims, negligence claims and a claim seeking punitive damages.

Defendant now seeks to exclude the testimony of plaintiff's designated expert witness, Kenneth Giambagno, arguing that Mr. Giambagno's proffered testimony regarding plaintiff's claimed damages for lost profits is irrelevant under the standards set out in Daubert[1] and its progeny. Plaintiff has responded to the motion to which defendant has replied.

Rule 702, Federal Rules of Evidence, governs the admissibility of expert testimony and allows testimony based upon "scientific, technical, or other specialized knowledge," if such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" The trial court is charged with the duty to ensure that testimony admitted under Rule 702 "is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); Weisgram v. Marley Co., 169 F.3d 514, 517 (8th Cir. 1999). Plaintiff, as the proponent of the challenged expert evidence here, bears the burden of proving by a

---

[1] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

preponderance of the evidence that the conditions of admissibility exist.  Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001); Pillow v. General Motors Corp., 184 F.R.D. 304, 307 (E.D. Mo. 1998).

In United States v. Vesey, 338 F.3d 913 (8th Cir. 2003), the Eighth Circuit explained that:

> Rule 702 requires the trial judge to act as a "gatekeeper," admitting expert testimony only if it is both relevant and reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  The trial court is granted broad discretion in its determination of reliability. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).  The gatekeeper role should not, however, invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence, see Arkwright Mut. Ins. Co. v. Gwinner Oil[, Inc.] Co., 125 F.3d 1176, 1183 (8th Cir. 1997).  Expert testimony should be admitted if [1] it is based on sufficient facts, [2] it "is the product of reliable principles and methods," and [3] "the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702; see also General Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

Vesey, 338 F.3d at 916-17.

The Court's inquiry under Fed. R. Evid. 702 is a flexible one and must be "tied to the facts of [the] particular case." Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999) (internal

quotation marks and citations omitted); <u>Daubert</u>, 509 U.S. at 594. "Too much depends upon the particular circumstances of the particular case at issue." <u>Kuhmo Tire</u>, 526 U.S. at 150. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." <u>Hartley v. Dillard's, Inc.</u>, 310 F.3d 1054, 1061 (8th Cir. 2002) (quoting <u>Bonner v. ISP Techs., Inc.</u>, 259 F.3d 924 (8th Cir. 2001)). Accordingly, questions of conflicting evidence must be left for the jury's determination, and a trial court should resolve doubts regarding an expert's testimony "in favor of admissibility." <u>Marmo v. Tyson Fresh Meats, Inc.</u>, 457 F.3d 748, 758 (8th Cir. 2006). It is also true, however, that if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded. <u>Hartley</u>, 310 F.3d at 1061.

Upon consideration of the circumstances of this case, the undersigned determines plaintiff to have met its burden of demonstrating Mr. Giambagno's expert testimony to be admissible under Rule 702.

As part of its claim for relief in the instant cause of action, plaintiff contends that it suffered lost profits from its inability to ship sodium percarbonate to its customers, Proctor & Gamble and Clorox, due to the ruptured railcars and the disrupted

business with these customers resulting therefrom. In Missouri,[2] it is well established that future profits "are too remote, speculative and too dependent upon changing circumstances to warrant a judgment for their recovery." Gesellschaft Fur Geratebau v. GFG Am., 967 S.W.2d 144, 147 (Mo. Ct. App. 1998). Lost future profits may only be recovered if the plaintiff establishes with "reasonable certainty both that the defendant's actions caused the plaintiff to lose profit and the amount of those damages." Metropolitan Exp. Serv., Inc. v. City of Kansas City, Mo., 71 F.3d 273, 275 (8th Cir. 1995) (citing Coonis v. Rogers, 429 S.W.2d 709, 714 (Mo. 1968)).

Plaintiff has secured the services of Certified Public Accountant Kenneth Giambagno to provide his expert opinion and testimony as to the amount of lost profits suffered by plaintiff. In his written report and subsequent deposition testimony, Mr. Giambagno provided his opinion as to plaintiff's "lost gross margin" in the instant cause of action. In its Motion to Exclude, defendant argues that the proper measure of lost profits is to be based on the calculation of *net* profits as opposed to gross profits; and that to the extent it may be argued that Mr. Giambagno indeed calculated net profits inasmuch as he deducted certain expenses in his calculations, he nevertheless failed to deduct all

---

[2]The parties do not dispute that Missouri law is applicable to the instant issue regarding plaintiff's ability to recover lost profits.

applicable expenses.

"Anticipated profits of an established business are recoverable 'only when they are made reasonably certain by proof of actual facts[.]'" All Star Amusement, Inc. v. Jones, 727 S.W.2d 930, 931 (Mo. Ct. App. 1987) (per curiam) (quoting Coonis v. Rogers, 429 S.W.2d 709, 714 (Mo. 1968)). Evidence from which a net profit figure may be derived must be produced. Id. It is the net loss, not the gross, that must be established. Coonis, 429 S.W.2d at 714.

> In general, in calculating lost profits damages, lost revenue is estimated, and overhead expenses tied to the production of that income are deducted from the estimated lost revenue. Overhead expenses include both fixed and variable expenses. Fixed expenses are the continuous expenses of the business that are incurred regardless of the loss of a portion of the business, for example rent, taxes, and administrative salaries. Variable expenses, also called direct expenses, are costs directly linked to the volume of business.

Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc., 155 S.W.3d 50, 55 (Mo. banc 2005) (citations omitted).

> [I]n tort actions, variable expenses, not fixed expenses, should be deducted from estimated lost revenues in the calculation of lost profits damages. These variable expenses are expenses that are tied directly to the unit of business or property damaged as a result of the defendant's actions. These variable expenses *may* include expenses for fuel, maintenance, depreciation, interest, insurance, salaries and benefits for particular employees and rental of storage

>           space so long as the party claiming lost
>           profits damages can produce evidence of the
>           estimated lost revenue of the unit of business
>           or property damaged and all ascertainable
>           variable expenses directly tied to it.

Id. at 56 (emphasis added).

Whether expenses are fixed or variable depends upon the particular facts of a case. Id. at 57.

A review of Mr. Giambagno's report and deposition shows him to have calculated plaintiff's lost profits by estimating plaintiff's lost revenue and deducting therefrom certain expenses considered by him to be variable. Although Mr. Giambagno repeatedly referred to his resulting calculation as "lost gross margin," he nevertheless testified that determining "gross margin" involves calculating "the difference between net sales value and variable expenses." (Giambagno Depo. at 64.) As applied to the instant cause of action, Mr. Giambagno testified:

> The gross margin per metric ton is the
> difference between the sales value and the
> variable cost to produce and sell that product
> for 2002, 2003. I calculated the average sale
> price for the product and deducted from that
> the transportation cost that OCI would have
> incurred. In other words, they saved it
> because they didn't ship. I also deducted the
> variable costs. On those costs that OCI would
> have incurred that did not incur or save
> because they didn't produce the difference of
> those figures is -- represents the gross
> margin or the margin for metric ton.

(Id. at 74.)

In his written report, Mr. Giambagno deducted what he determined to be plaintiff's variable manufacturing costs, that is, the cost of raw materials and utilities. As such, although Mr. Giambagno labeled his calculations as "gross" margins, it is apparent that he nevertheless deducted variable costs from OCI's expected lost revenue to bring his calculations within the definition of recoverable lost profits under Ameristar. Although defendant disagrees with the label given by Mr. Giambagno to his calculations, the mere title given to an otherwise approved method of calculation will not serve to keep Mr. Giambagno's substantive opinion from the jury.

Mr. Giambagno further testified that he did not deduct administrative expenses, depreciation or labor costs inasmuch as they represent fixed costs, that is, "they didn't vary. They were not reduced as a result of the lack of production caused by the event so they continue on as normal." (Giambagno Depo. at 90-91.) Defendant disagrees, arguing that common sense dictates that "the cost of labor will vary with the volume of a manufacturer's business, going up when there are more tons of a product to be made and sold." (Deft.'s Reply at p. 6.)

As noted in Ameristar, the determination as to whether costs are to be considered fixed or variable must be made on the particular facts of a given case. Such fact-based determinations may include the characterization of labor costs. E.g., Ameristar,

155 S.W.3d at 56-57 (under the facts of the case, salaries, benefits and training of certain staff and employees were fixed costs as testified to by owner); Universal Power Sys., Inc. v. Godfather's Pizza, Inc., 818 F.2d 667, 674 (8th Cir. 1987) (applying Missouri law) (accountant's testimony which included certain labor costs as fixed and other labor costs as variable sufficient to support jury verdict as to lost profits). As such, this Court cannot say as a matter of law that labor costs are *per se* variable or fixed. Instead, this issue is one best left for the jury. See Adjusters Replace-A-Car, Inc. v. Agency Rent-A-Car, Inc., 735 F.2d 884, 891 n.6 (5th Cir. 1984) ("In most cases, . . . we think it will be obvious to judges and juries which costs are appropriately viewed as fixed and which as variable over the relevant time period. When a legitimate dispute arises as to the characterization of certain costs, the question is one of fact to be resolved by the jury.").

The parties disagree here as to whether certain costs should be considered fixed or variable in the calculation of plaintiff's lost profits. Because it is this factual basis of Mr. Giambagno's opinion which is in dispute, it is the credibility of his testimony which is at issue, not the admissibility. "[I]t is up to the opposing party to examine the factual basis for the opinion in cross-examination." Hartley, 310 F.3d at 1061.

Upon review of the parties' respective arguments and the

evidence submitted to the Court in support thereof, the Court is satisfied that Mr. Giambagno's expert opinion is based upon sufficient facts, is the product of reliable principles and methods and that Mr. Giambagno has applied the principles and methods reliably to said facts of the case. Although a factual dispute exists which may serve to discredit Mr. Giambagno's opinion, such dispute may be brought out at trial by the defendant through cross-examination and the presentation of contrary evidence. In the circumstances of this case, this factual challenge alone provides an insufficient basis for this Court to invade the province of the jury in determining the credibility of this expert witness and what weight to accord his testimony. Accordingly, defendant's motion to exclude Mr. Giambagno's testimony should be denied.

Defendant's alternative and cursory request for leave to name an expert witness to rebut Mr. Giambagno's testimony should likewise be denied. Mr. Giambagno prepared his report in May 2008 and his deposition was taken on July 18, 2008. The deadline by which defendant was to identify expert witnesses was September 15, 2008. Defendant provides no reason in its instant request why it was unable to timely secure an expert witness to rebut Mr. Giambagno's expert opinion when such opinion was known to it at least two months prior to the deadline by which it was to name an expert itself.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant American Railcar Industries, Inc.'s Motion to Exclude Testimony of Plaintiff's Expert Kenneth Giambagno (Doc. #78) is denied in its entirety.

_____
UNITED STATES MAGISTRATE JUDGE

Dated this  _30th_  day of March, 2009.